UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JODY LEVINE,
FRANK CARSON,
LENA KIELISZAK,
On behalf of themselves and all others
similarly situated,

                           Plaintiffs,

                                                                             DECISION AND ORDER

                                                                             11-CV-6321L

                        v.

UNITY HEALTH SYSTEM,
WARREN HERN,
MARY ALICE KELLER,

                           Defendants.
_____

## INTRODUCTION

The three named plaintiffs, on behalf of a class alleged to be similarly situated, bring this action against defendants, Unity Health Systems and two of its officers (collectively "Unity"), alleging that Unity violated the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA") and New York Labor Law §650 et seq., by misclassifying the plaintiffs as exempt "bona fide professionals" and failing to pay them for overtime hours at the requisite rate. The plaintiffs were employed by Unity as Primary Therapists ("PT"s), in the area of mental health counseling and therapy.

On the same day it answered the complaint, Unity moved for summary judgment pursuant to Fed. R. Civ. Proc 56, on the grounds that the undisputed facts establish that the plaintiffs were correctly classified as exempt under the FLSA. Plaintiffs oppose the motion, and have cross moved to strike certain evidence submitted by Unity in its reply. While no discovery has taken place, the material facts are undisputed. For the reasons set forth below, I find that the undisputed facts establish that the plaintiffs were correctly classified as learned professionals for purposes of the FLSA and New York Labor Law, and that Unity's reply papers and supporting evidence were in

response to new issues raised by plaintiff in its responding papers.  Unity's motion for summary judgment (Dkt. #5) is therefore granted, and plaintiffs' cross motion to strike (Dkt. #21) is denied.

## DISCUSSION

**I.     Unity's Motion for Summary Judgment**

Unity argues that the undisputed evidence satisfies the two-prong test for determining whether an individual is an exempt, "bona fide professional" under the FLSA.[1]  That test requires that: (1) the employee must be paid on a salary basis, at least $455 per week (as defined by FLSA guidelines); and (2) to be considered a "learned professional," the employee's "primary" duty must be "the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction . . ." 29 C.F.R.  §§ 541.300, 541.301 (defining the "learned professional" exemption).

In order to be considered "salaried" employees pursuant to the FLSA, employees must receive the same pay each period "which amount is not subject to reduction because of variations in the quality or quantity of work performed."  29 C.F.R. §541.602.  Unity contends that the first prong of the learned professional test – the salary prong – is easily met for the plaintiffs, because they were compensated on a salary basis, above the statutory threshold dollar amount.  In support of this contention, Unity has submitted time and payment records for each of the plaintiffs, which demonstrate that, with the exception of one employee's FLSA-compliant medical leave, plaintiffs received the same pay each period, regardless of the quality or quantity of work performed, in excess of $455 per week.

---

[1] The test for "bona fide professional" capacity under the New York Labor Law requires only that the employer meet the "duties" test, and not a salary requirement.  Because the FLSA test is more expansive and I find that Unity has met both prongs of that test, that finding is dispositive of the plaintiffs' FLSA and New York Labor Law claims, and a separate analysis of the state claims is unnecessary.

Plaintiffs do not dispute that they were paid the same amount regardless of the quantity or quality of work performed, or that their salaries meet and exceed the statutory threshold amount: rather, they contend that *if* had they worked fewer than forty hours, and in the absence of any already-earned paid time off ("PTO"), Unity *theoretically might have* paid them less than usual. Plaintiffs also argue that certain communications from Unity to the plaintiffs, such as pay stubs which listed "hourly rates" and a "Personnel Action Notification" announcing a raise that contained references to "[y]our new hourly rate of pay and annual salary," are indicative of an hourly rate of pay – or at least create a question of fact as to whether plaintiffs were salaried or hourly employees.

Unity maintains that these "hourly rate" references are not evidence that employees were non-salaried, or that their pay was subject to a reduction if the plaintiffs worked fewer than forty hours per week. Rather, Unity characterizes its simultaneous use of the terms "hourly rate" and "annual salary" as the result of an "administrative convenience" employed by Unity, whereby annual salaries are converted to hourly rates internally, solely for administrative purposes.

Despite Unity's use of potentially confusing references to an "hourly rate" in its payroll statements to the plaintiffs, the focus of the FLSA, and this Court's inquiry, is whether the plaintiffs were actually paid on a salary or hourly basis, and not how they may have interpreted their employer's contemporaneous use of "salary" and "hours" terminology. The time and payroll records submitted by Unity, the completeness and veracity of which are undisputed, conclusively establish that the plaintiffs, at all relevant times, were – to the penny – paid precisely the same amount every pay period, "which amount [was] not [reduced] because of variations in the quality or quantity of work performed." 29 C.F.R. §541.602. While plaintiffs may question whether Unity might theoretically have been able to reduce their pay had they worked fewer than forty hours, there is no evidence that Unity ever retained, exercised, or purported to have any such authority or intent, and rank speculation is insufficient to create a material issue of fact. The undisputed evidence indicates that the plaintiffs were, in fact, salaried employees, and thus, the first prong of the bona fide professional test has been met.

The "advanced knowledge" requirement for learned professionals requires that the employee's "primary" duty be "the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. §541.300(a)(2)(I).

Plaintiffs claim that their primary duties as PTs did not require knowledge in an advanced field, because they were unable to make medical diagnoses, had limited input into treatment plans, and could not implement treatment plans by themselves.  They state that, at most, a PT prepared initial assessments from which doctors or psychiatrists could make diagnoses, and made suggestions to doctors and psychiatrists about treatment plans.  Plaintiffs emphasize that their authority was limited to *assessment* and *proposal*, and that their suggestions could be altered, rejected or even ignored by treating physicians and psychiatrists, or overruled by supervisors at weekly meetings. Plaintiffs flatly contend that their lack of authority to make diagnoses or dictate treatment plans takes them out of the realm of "learned professional."

As Unity points out, however, the absence of authority to diagnose or unilaterally prescribe a treatment plan is not determinative of whether an employee is a "learned professional," and the duties of PTs undisputedly were not limited solely to assessment and proposal, but included direct patient contact and leadership of group therapy sessions.  The proper focus of the analysis is not upon the authority given to the employee, but whether the employee's primary duties, whatever they may be, require "knowledge of an advanced type in a field . . .customarily acquired by a prolonged course of specialized intellectual instruction."29 C.F.R. §541.300(a)(2)(I).  On this basis, the learned professional exemption has been applied by courts to a number of medical and social-services jobs not involving diagnosis and sole control over treatment, such as school athletic trainers who help to rehabilitate injuries, nurses, and a truancy prevention case manager who assesses children and families and recommends treatment and other resources.  *See Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521 (5th Cir. 1999); *Chatfield v. Children's Svcs.*, 555 F. Supp. 2d 532 (E.D.Pa.

2008); *Fazekas v. Cleveland Clinic Health Care Ventures, Inc.*, 29 F. Supp. 2d 839 (N.D.Ohio 1998).

Here, plaintiffs' duties as PTs primarily consisted of making assessments of patients' mental conditions, identifying specific clinical problems, devising plans of action specific to each patient based on those assessments, coordinating with therapists, specialists, and health care providers to identify and incorporate the resources required for the treatment plan, and individually leading group, individual, family, and/or crisis psychotherapy sessions. While the plaintiffs' job duties also included administrative tasks, such as completing necessary paperwork, the primary duty and purpose of the PT position, as reflected by plaintiffs' and Unity's affidavits, and the plaintiffs' written performance review forms, is to assess patients, help develop appropriate treatment plans, and administer therapy directly to patients. These tasks were performed with little oversight, and of necessity, required reliance on the PT's own independent judgment. I find that the primary duties of PTs, including leadership of group therapy sessions and assessing patients' medical conditions and needs, manifestly required the exercise of professional judgment and knowledge of an advanced type, typically requiring a prolonged course of specialized intellectual instruction.

The educational requirements for the PT position are also undisputed. PTs are required to obtain a master's degree in social work, mental health counseling, marriage and family therapy, and/or creative arts therapy. They also must secure and maintain state licensure (or a state-issued permit, followed within 1-2 years by licensure) as a Licenced Mental Health Counselor ("LMHC"), which itself requires a master's degree in one of the same four areas. Each of these areas is designated by New York State as forming a separate professional classification, and each requires highly particularized coursework tailored to the relevant area of licensure, the academic requirements for which are set forth in detail in the New York Education Law. *See* 8 N.Y.C.R.R. §52.30(a) (social work master's degree requires 60 semester hours of study covering six designated areas of study and a field practicum of a minimum 900 clock hours); N.Y. Educ. Law §§ 7704 (social work master's degree to be from a registered and accredited program, with a minimum twelve hours of clinical

courses); 8402 (mental health counseling coursework to include ten specified areas of study, plus a minimum one-year supervised internship); 8403 (marriage and family counseling coursework to include six specified areas of study, plus a practicum with a minimum of 300 client contact hours); 8404 (creative arts therapy coursework to include seven areas of study, including clinical experience).

Although plaintiffs allege that Unity's imprimatur for as-yet-unlicensed PTs to work with only a permit renders the "licensure requirement" a nullity for all intents and purposes, I note that in order to obtain a limited permit to practice as a LMHC, an applicant is required to have already completed all of the academic requirements for licensure. The only remaining requirement for licensure of a permit-holder is the completion of fifteen hundred hours, three thousand hours, or three years' worth (depending on the licensure area) of practical experience in the field, hours which Unity PTs gained by performing precisely the same work, at the same level, as already-licensed PTs. *See* 29 C.F.R. §541.705 (bona fide professional exemption does not apply to trainees if they are not performing the duties of a professional employee).

Accordingly, I conclude that the courses of specialized study necessary for a permit or licensure as a LMHC, and the requirement that applicants hold a master's degree in one of four specific areas relevant to the primary duties of a PT, operated to guarantee that both permit-holders and LMHCs hired by Unity as PTs had completed "a prolonged course of specialized intellectual instruction" in an "advanced field of science or learning." 29 C.F.R. §541.300(a)(2)(i).

Based on the foregoing, I conclude that the undisputed professional credentials that Unity demands of its PTs (master's degree plus state licensure in a designated area, each of which requires the completion of its own particularized course of study) satisfy the "particularized course of study" requirement of the learned professional test.

I also observe that the master's degree and LMHC prerequisites, and their prescribed areas of study, are both narrowly tailored to the field of mental health counseling and therapy, and more specifically to the type of mental health assessments and therapies that comprise plaintiffs' primary

duties as PTs. For this reason, the facts presented here are distinguishable from cases such as *Solis v. State of Washington, Dep't of Soc. & Health Svcs.*, 656 F.3d 1079, 1088 (9th Cir. 2011), upon which plaintiffs substantially rely. *Id.* (collecting and discussing relevant case law and agency opinion letters, and holding that although social workers who are required to complete a specific course of study focusing on areas of knowledge directly related to their position are "learned professionals," the subject social workers are not exempt "learned professionals" because their coursework requirements are not sufficiently "specialized": they do not require any content relating to social work duties, and credit hours in such diverse and unrelated fields as anthropology, archaeology, religious studies or criminal justice could feasibly qualify an applicant for the subject social work positions). *See generally* 29 C.F.R. §541.301(d) ("the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes").

I therefore conclude that the undisputed evidence establishes that plaintiffs' PT positions satisfy both the salary and "primary duty" prongs of the bona fide professional test, and that Unity has met its burden to demonstrate, as a matter of law, that Primary Therapists are exempt from the FLSA as "learned professionals." I have considered the remainder of plaintiffs' arguments in opposition, and find them to be without merit.

## II.     Plaintiffs' Motion to Strike

Plaintiffs have moved to strike certain "new evidence" submitted by Unity in its reply in support of its summary judgment motion, and request that the Court refuse to consider Unity's evidence that the plaintiffs were paid on a salary basis and that no payroll deductions violative of the FLSA or contradictory to the requirements for salaried employees were taken. Plaintiff contends that Unity could and should have been submitted in Unity's initial papers, if at all. Unity argues that it hasn't actually raised a new issue, but is simply is responding to arguments and evidence submitted by plaintiffs in their opposition papers.

Upon review of the parties' submissions, I find that Unity's reply papers, and the evidence submitted therewith, directly respond to the arguments raised by plaintiffs in their opposition papers. Because the Unity reply does not raise new issues or otherwise prejudice plaintiffs in opposing the motion for summary judgment, I find that the reply was proper, and is entitled to due consideration.

## **CONCLUSION**

For these reasons, Unity's motion for summary judgment (Dkt. #5) is granted, and plaintiffs' motion to strike (Dkt. #21) is denied. The complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
　　　 March 6, 2012.